# IN THE COURT OF APPEALS OF IOWA

———————

No. 25-0726
Filed April 29, 2026

———————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Inez Nicholas Luna,**
Defendant–Appellant.

———————

Appeal from the Iowa District Court for Page County,
The Honorable Craig M. Dreismeier, Judge.

———————

**AFFIRMED**

———————

Martha J. Lucey, State Appellate Defender, Theresa R. Wilson, Assistant
Appellate Defender, and Kyle Kopf (until withdrawal), Student Legal
Intern, attorneys for appellant.

Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney
General, attorneys for appellee.

———————

Considered without oral argument
by Ahlers, P.J., and Buller and Sandy, JJ.
Opinion by Sandy, J. Partial Dissent by Ahlers, P.J.

**SANDY, Judge.**

This appeal arises from a course of conduct that began with Inez Luna's private communications with a fourteen-year-old minor and progressed to secrecy, attempted isolation, and ultimately a physical advance. The district court was entitled to view that progression not as accidental or misunderstood, but with requisite specific intent. Luna challenges the sufficiency of the evidence supporting that finding, as well as the court's decision to impose incarceration and the legality of the suspended fines. On this record, the evidence was substantial, the sentencing decision was reasoned and grounded in proper factors, and the legal challenge is foreclosed by precedent. We affirm.

## BACKGROUND FACTS AND PROCEEDINGS

The State charged Luna with one count of enticing a minor and two counts of assault following acts occurring in May 2024 in Page County. The charges arose from Luna's interactions with T.A., a fourteen-year-old minor.

The record reflects that Luna began communicating with T.A. through the Snapchat application on or about May 2, 2024, coinciding with T.A.'s birthday. Over the course of several days, Luna initiated and continued a series of messages with T.A. that included personal questions, compliments regarding her appearance, and requests that she delete their communications. On May 9, Luna asked T.A. to go for a drive with him and suggested she should not tell anyone about it. That outing did not occur. Luna sent additional messages in the ensuing days, including inquiries about T.A.'s clothing and statements referring to their relationship as a "secret."

During the weekend of May 17, T.A. stayed at Luna's home for a sleepover. While T.A. and Luna were briefly in a bedroom alone, Luna pulled

T.A. closer, placed his hand on her chin, and asked her for a kiss. T.A. declined, and no kiss occurred. The following day, while T.A. was on a staircase in the home, Luna struck her buttocks with an open hand and told her to "move."

Following that weekend, T.A. disclosed Luna's conduct to several people and law enforcement. Law enforcement obtained the Snapchat messages that had been preserved. The State subsequently filed a trial information on July 17, charging Luna with one count of enticing a minor and two counts of assault causing bodily injury.

The case proceeded to a bench trial in January 2025. Luna waived his right to a jury trial both in writing and on the record. At trial, the court received exhibits, including the Snapchat communications, and heard testimony from T.A. and other witnesses. Luna moved for judgment of acquittal at the close of the State's evidence and renewed the motion at the close of all evidence; the court reserved ruling and later denied the motion in its written order.

Following trial, the district court found Luna guilty of enticing a minor, in violation of Iowa Code section 710.10(2) (2024), and two counts of assault in violation of section 708.2(7). In April, the court sentenced Luna to an indeterminate term of incarceration not to exceed five years on the enticement conviction and ten days on each assault conviction, with all sentences to run concurrently. The court imposed fines on each count but suspended those fines. The court also entered a no-contact order and determined Luna did not have the reasonable ability to pay category "B" restitution.

Luna appeals from his convictions and sentences, challenging the sufficiency of the evidence supporting the enticement conviction, the district court's exercise of sentencing discretion, and the legality of the suspended fines.

## DISCUSSION

### I. Sufficiency of the Evidence

We review Luna's challenge to the sufficiency of the evidence for the correction of errors at law. *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). We defer to the jury's verdict and will uphold the verdict if supported by substantial evidence. *Id.* "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* When conducting this review we construe evidence "in the light most favorable to the State" which includes any "legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.* (citation omitted).

To prove that Luna enticed T.A. with a sexual purpose in violation of Iowa Code Section 710.10(2), the State must prove that he intended "to commit an illegal sex act upon or sexual exploitation of [T.A.]" at the time of the alleged enticement. Iowa Code § 710.10(2). That code section provides, in full, that:

> A person commits a class "D" felony when, without authority and with the intent to commit an illegal sex act upon or sexual exploitation of a minor under the age of sixteen, the person entices or attempts to entice a person reasonably believed to be under the age of sixteen including a law enforcement officer or agent posing as a minor under the age of sixteen.

*Id.* The Iowa Supreme Court in *State v. Osmundson* recognized that the statute creates an explicit standard as the focus is on actions of the defendant

4

and a scienter element is included, underscoring that specific intent is built into the offense. 546 N.W.2d 907, 910 (Iowa 1996).

As the district court framed the elements, the State was required to prove:

> 1. On occasions between May 2, 2024 and on or about May 31, 2024, [Luna] enticed or attempted to entice T.A.
>
> 2. [Luna] did so with the specific intent to commit sexual abuse or sexual exploitation upon T.A.
>
> 3. [Luna] committed an overt act evidencing his purpose to entice T.A.
>
> 4. At the time T.A. was enticed or [Luna] attempted to entice T.A., either:
>
>> a. T.A. was a minor under the age of sixteen; or
>>
>> b. [Luna] reasonably believed T.A. was under sixteen years of age.

*See* Iowa Crim. Jury Instruction 1000.12. In addition to these elements, it clarified that

> The state needs to show Luna had the specific intent to commit a sexual abuse or sexual exploitation of T.A. Specific intent means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind. Because determining the defendant's specific intent requires a fact finder to decide what he was thinking when an act was done, it is seldom capable of direct proof. Therefore, a finder of fact should consider the facts and circumstances surrounding the act to determine the defendant's specific intent. The fact finder, may, but is not required to conclude a person intends the natural results of his acts.

It also supplementally defined "entice" as meaning "to wrongfully invite, tempt, solicit, lure, coax, seduce or persuade a person to do a thing." *See* Iowa

5

Crim. Jury Instruction 1000.13. Finally, it defined the "overt act" requirement as requiring proof of an

> act indicating the person's intent to accomplish the enticement. The overt act itself does not have to be a criminal act. [Luna] cannot be guilty of enticing, or attempting to entice unless [the court] find[s] that he committed an overt act that showed it was [Luna]'s purpose to entice T.A.

*See* Iowa Crim. Jury Instruction 1000.14. Luna contends that the State failed to satisfy the second element: "The evidence is insufficient to prove that Mr. Luna had the requisite specific intent at the time of the overt act." We disagree.

Substantial evidence supports the district court's finding of specific intent. Luna initiated and maintained private communications with T.A., a fourteen-year-old minor, through Snapchat. Those communications became increasingly focused on T.A.'s physical appearance—her body, lips, and clothing—and included encouragement to wear a two-piece swimsuit. He instructed her to delete messages and described their relationship as a "secret," conduct the fact finder could reasonably view as concealment.

Luna also asked T.A. to go for a drive and told her she could not tell anyone. That invitation—paired with secrecy—supports an inference he sought to isolate her. His subsequent conduct confirms the trajectory of those communications. While alone with T.A., Luna pulled her closer, placed his hand on her chin, and asked her for a kiss. Taken together, this is not a series of disconnected acts. It is a progression: private messaging, sexualized comments, secrecy, attempted isolation, and physical advance. From that course of conduct, a rational fact finder could infer Luna specifically intended to engage in a prohibited sexual act or exploitation. After all, "[s]pecific intent is seldom capable of direct proof." *State v. Ernst*, 954 N.W.2d 50, 55 (Iowa 2021) (citation omitted). "It is the rare case in which a criminal

defendant openly proclaims his further intent while committing his crime." *State v. Hawkins*, 27 N.W.3d 562, 569 (Iowa 2025).

**II.** **The district court was not required to accept innocent explanations for each individual act or to view them in isolation.** *See State v. Jones***, 967 N.W.2d 336, 343 (Iowa 2021) (explaining a jury is "not required to accept the defendant's version of the events" (citation omitted));** *State v. Brimmer***, 983 N.W.2d 247, 256 (Iowa 2022) (stating it is "for the jury to decide which evidence to accept or reject"). As we recently said in rejecting a similar sufficiency argument, "[a] criminal defendant is not entitled to acquittal merely because he wishes the jury had believed him instead of the victim."** *State v. Hernandez***, 20 N.W.3d 502, 507–08 (Iowa Ct. App. 2025). Substantial evidence supports the district court's finding of specific intent.Abuse of Sentencing Discretion**

We review a district court's specific sentencing decision for abuse of discretion. *State v. Laffey*, 600 N.W.2d 57, 62 (Iowa 1999). We will not disturb a sentence unless the defendant shows an abuse of discretion or a defect in the sentencing procedure. *State v. Witham*, 583 N.W.2d 677, 678 (Iowa 1998). "An abuse of discretion will only be found when a court acts on grounds clearly untenable or to an extent clearly unreasonable." *State v. Hopkins*, 860 N.W.2d 550, 553 (Iowa 2015) (citation omitted).

A sentencing "court shall state on the record the basis for the sentence imposed." Iowa R. Crim. P. 2.23(2)(g). The sentencing court weighs "the nature of the offense, the attending circumstances, the age, character and propensity of the offender, and the chances of reform" along with the defendant's criminal history, family circumstances, and the societal goals of sentencing. *State v. Damme*, 944 N.W.2d 98, 106 (Iowa 2020) (citation omitted). The district court's statement may be "terse and succinct" if "the

reasons for the exercise of discretion are obvious in light of the statement and the record before the court." *State v. Thacker*, 862 N.W.2d 402, 408 (Iowa 2015). The district court "has broad discretion to impose the sentence it determines is best suited to rehabilitate a defendant and protect society." *State v. West Vangen*, 975 N.W.2d 344, 355 (Iowa 2022). This discretion "to impose a particular sentence within the statutory limits is cloaked with a strong presumption in its favor," and we will only reverse for an abuse of discretion. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002).

At sentencing, the district court gave a lengthy explanation of its decision:

> As to sentencing options, I have considered everything that the Code will allow me to consider, which does include the psychosexual evaluation from Dr. Newring, the presentence investigation report, victim impact statements and obviously everything that's been contained in those documents. I certainly take note of what was in each of these reports. I certainly understand the criminal history and recognize that most, with the exception of the most recent incident in Boone County, Iowa, that most of this has been a number of years ago. And I also understand and appreciate the fact that none of these prior offenses have any sort of a sexual element, if you will, which would be at all similar to what count I is in this situation. So I recognize that.
>
> I recognize the fact that you're employed and have a job and have a job that you can go back to. So I appreciate that as well. It seems as though that's difficult sometimes to get individuals to do.
>
> And I appreciate the fact that the psychosexual evaluation seems to conclude that there is a low risk for you to reoffend. But I'll be remiss if I— I'd be remiss if, ultimately speaking, sir, I didn't tell you what I was most concerned about and what I'm concerned about in regards to the idea of probation.
>
> I have considered a suspended sentence for you. I've actually thought long and hard about this ever since my ruling was issued, prior to seeing anything as to what should happen. Understanding the impact that

this has on this minor child, and that seems to be very apparent in regards to her victim impact statement. And I appreciate your remorse that you shared with the Court this morning. That isn't for naught. The circumstances of this case really are what trouble me more than anything with what's going on. As you know, this was a trial to the Court. And I had, as in any case, first-hand experience of hearing everything that was presented and what was going through this child's mind, seeing the evidence and text messages and the actions that occurred.

There's certainly some things that stand out. And I guess, to that extent, I would agree with what the State argues as to what needs to happen. I was concerned to begin with, but I do also take note of some of the information that was in Dr. Newring's report. Perhaps the intentions were innocent enough in regards to trying to bolster the self-awareness or self-esteem of this minor child, but the manner in which this went forward was I think completely inappropriate. You know, the report references that she has had a history of psychiatric care, that you knew this, that you knew this in advance, that you knew she had a history of calling herself names out loud and putting herself down. She has indicated you treated her like your own daughter, like a family member. I honestly think that you probably had good intentions in regards to that. She's a friend of your daughter, and that was important.

But it seems to violate and take advantage of a fourteen-year-old's trust and everyone, yourself included. The messages that were sent and obviously the actions that I saw amounting and leading up to this conviction I just think in the end are significant, and I just can't brush that under the rug. You clearly seem to be involved in a pattern of behavior to gain her trust or to gain her confidence, to bolster her self-esteem, to make her feel appreciated, and at some point it obviously went way too far. The comments that were made in regards to having beautiful lips and she has a gorgeous body and you wish she wore a two-piece swimsuit, that's part of—you know, the attempt to kiss, that her idea of being scared, your deliberateness in making sure that she deletes her messages and doesn't share that information with others, "don't tell anybody; don't let my daughter see your phone," all of those things are incredibly concerning to me. In the end that's really what is driving me more than anything else in this situation.

. . . .

> ... This Court will run these sentences concurrent with one another. In running these sentences concurrent with one another, I've considered your need for rehabilitation, the need to protect society, to prevent further offenses like this from occurring, also based upon the information contained within the presentence investigation report and the recommendations therein. As to these sentences, other than the fines, this Court declines to suspend those sentences. This Court will order your incarceration accordingly.

Upon our review, we find the district court did not abuse its discretion in imposing carceral sentences. Each of the factors the district court discussed is a proper sentencing factor. *See* Iowa Code § 901.5. Given the sentences are based on proper factors and sufficiently explained, we discern no abuse of discretion, and we will not disturb them. *See Formaro*, 638 N.W.2d at 724. To the extent that Luna asks us to reweigh the factors and grant him probation, we will not do so. *See State v. Gordon*, 998 N.W.2d 859, 863 (Iowa 2023) ("The test for whether a sentencing court abused its discretion is not whether we might have weighed the various factors differently.").

## III.    Illegality of Sentences

Luna's final argument claims that the sentences imposed are illegal because of the district court's imposition of prison but suspension of fines. His argument is based entirely on the dissenting opinion in *State v. Laue*, No. 23-0208, 2023 WL 8448475, at *2–4 (Iowa Ct. App. Dec. 6, 2023) (Ahlers, J., concurring in part and dissenting in part). But our court has rejected that position while sitting en banc. *State v. Cullum*, No. 23-0911, 2025 WL 2057904, at *4–5 (Iowa Ct. App. July 23, 2025) (en banc). Accordingly, we are not convinced that suspension of fines in this case amounts to an error at law. *See State v. Duffield*, 16 N.W.3d 298, 304

10

(Iowa 2025) (declining to endorse the *Laue* dissent's reasoning). So, we affirm the district court in all respects.

**AFFIRMED.**

Buller, J., concurs; Ahlers, P.J., dissents in part and concurs in part.

**AHLERS, Judge** (concurring in part and dissenting in part).

I concur with the majority opinion as it relates to finding sufficient evidence to support Inez Luna's conviction for enticing a minor and finding no abuse of the district court's discretion to impose a term of incarceration for that crime. But I respectfully dissent from the decision to reject Luna's challenge to the suspension of his fines on his convictions.

For the reasons stated in my partial dissents in *State v. Laue*, No. 23-0208, 2023 WL 8448475, at *2–4 (Iowa Ct. App. Dec. 6, 2023) (Ahlers, J., concurring in part and dissenting in part), and *State v. Cullum*, No. 23-0911, 2025 WL 2057904, at *10–12 (Iowa Ct. App. July 23, 2025) (en banc) (Ahlers, J., concurring in part and dissenting in part), our sentencing statutes require a defendant to be placed on probation if any part of a sentence is suspended. Since the district court suspended the fines on Luna's three charges, it was required to place him on probation. *See* Iowa Code §§ 901.5(3) (giving the court authority to suspend execution of any part of a sentence "as provided in chapter 907"), 907.3(3) (2024) (requiring the court to place the defendant on probation upon suspension of a sentence). Because the court did not couple the suspension of Luna's fines with probation, the suspension of the fines runs afoul of our sentencing statutes and constitutes illegal sentences. Therefore, I respectfully dissent from that part of the majority opinion that does not vacate the sentences and remand for resentencing.

I also respectfully disagree with the majority's contention that *Cullum* answered the question here. The *Cullum* majority identified the issue as "whether a district court has the flexibility to impose a term of incarceration and suspend the fines." 2025 WL 2057904, at *4. As I pointed out in my partial dissent in *Cullum*, that's not the issue. *Id.* at *10 (Ahlers, J.,

12

concurring in part and dissenting in part). No one disputes that the court has the authority to impose a term of incarceration while also suspending the fine, so the lengthy discussion in the *Cullum* majority opinion addressing that undisputed issue doesn't answer the question presented here. The pertinent question is this: If the fine is suspended, do the governing statutes require the court to also place the defendant on probation? For the reasons highlighted above and discussed in more detail in my partial dissents in *Laue* and *Cullum*, I conclude they do.

In the event this case goes to the supreme court on further review—and I hope it does—it is worth mentioning that the State appears to make a similar mistake as the *Cullum* majority in identifying the issue. The State argues that Luna "urges that Iowa's district courts lack the statutory ability to impose a period of incarceration and suspend the attendant fine." Again, that is not the issue. No one is claiming there is some link between the carceral part of the sentence and the fine part of the sentence that prevents the district court from suspending the fine if incarceration is ordered. To the contrary, Luna and I both acknowledge that the court can suspend the fine even though Luna was sentenced to prison. The governing statute expressly grants that authority. *See* Iowa Code § 901.5(3) (granting the court the authority to "suspend the execution of the sentence *or any part of it* as provided in chapter 907" (emphasis added)). So, the incarceration decision here has nothing to do with the issue at hand. The sole issue is whether, once the decision was made to suspend the fine, the court was required to place Luna on probation. I conclude that section 907.3(3) unambiguously states that probation *as it relates to suspension of the fine and not the imposition of incarceration* is required. And, contrary to another part of the State's argument, the "may" language in section 907.3(3) refers to the fact that the district court has discretion whether to suspend any part of the sentence; it

13

doesn't make it discretionary whether to place the defendant on probation once it chooses to suspend any part of the sentence. Once the decision to suspend any part of the sentence is made—here, the fine—section 907.3(3) requires imposition of probation as it relates to that suspended fine.

Because the State misidentifies the issue—as did the *Cullum* majority—it barks up the wrong tree by citing cases that address issues that are not in dispute here and proclaiming there to be a thirty-year history of precedent. But none of the cases the State cites support its position as to the real issue in this case. *See State v. Duffield*, 16 N.W.3d 298, 304 (2025) (holding that the court had the authority to suspend the fine, but saying nothing about whether there is a corresponding obligation to couple the suspension with probation); *State v. Ayers*, 590 N.W.2d 25, 29–32 (Iowa 1999) (recognizing that the court has authority to suspend a fine even though it imposed a prison sentence, but saying nothing about whether the suspension of the fine would also require imposition of probation); *State v. Klein*, 574 N.W.2d 347, 348–49 (Iowa 1998) (same); *State v. Grey*, 514 N.W.2d 78, 79 (Iowa 1994) (same)[1]; *State v. Chana*, 476 N.W.2d 38, 39–40 (Iowa 1991) (same). The only case the State cites that even arguably addresses the issue in this case is *State v. Lee*, 561 N.W.2d 353 (Iowa 1997), which is the case relied upon by Judge Langholz in his special concurrence in *Cullum*. In a footnote to my partial dissent in *Cullum*, I explained why I am not persuaded that *Lee*

---

[1] *Grey* actually supports my position when it notes, "Suspending a fine and imposing no fine are not equivalent: a suspended sentence is subject to later being executed if the defendant fails to comply with conditions set by the court." 514 N.W.2d at 79. This is a recognition that probation is required when the fine is suspended because there is no way other than probation-revocation proceedings that could trigger the execution of the suspended fine. The suspension of Luna's fine with no corresponding probation means there is no possible way the fine "is subject to later being executed," running afoul of the principle enunciated in *Grey*.

controls the outcome here, so I will not repeat my reasoning here.  *See* 2025 WL 2057904, at *11 n.7.

As I have noted before, this issue has been lingering for several years. And I note that there is adversarial briefing on the issue, and Luna asked the supreme court to retain the case to address it.  Alas, the supreme court did not retain it.  But it is my hope that Luna will seek further review, and our supreme court will grant it.  While I believe the relevant statutes unambiguously require the outcome I've described, there continues to be disagreement on this court.  I believe it is in everyone's best interest for the supreme court to take the case on further review to resolve the disagreement, whatever that resolution may be.